| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO | |
| NICOLAS DE JESUS–GAMBOA,<br><br>    Plaintiff,<br><br>    v.<br><br>RÍO MAR ASSOCIATES LPSE, d/b/a Río Mar Beach Resort & Spa, a Wyndham Grand Resort; MANUEL BIRRIEL; and an unnamed insurance company,<br><br>    Defendants. | Civil No. 10-2013 (JAF) |

**OPINION AND ORDER**

Plaintiff sues under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to e-17, alleging discrimination on the basis of sex and retaliation for his opposition to that discrimination. (Docket No. 1.) He also claims relief for the same conduct under Puerto Rico law, specifically 29 L.P.R.A. § 149 (2009) ("Law 100"), 29 L.P.R.A. § 155–155m (2009) ("Law 17"), and Puerto Rico constitutional and tort law under 31 L.P.R.A. §§ 5141–5142 (2009) ("Article 1802"). Codefendants Río Mar Associates LPSE d/b/s Río Mar Beach Resort and Spa, a Wyndham Grand Resort ("Río Mar") and Manuel Birriel ("Birriel") each move for summary judgment under Federal Rule of Civil Procedure 56. (Docket Nos. 41; 44.) Plaintiff opposes (Docket No. 59), Codefendants respond (Docket No. 70), and Plaintiff replies (Docket No. 74).

# I.

# **Factual Synopsis**

Plaintiff works as an attendant in a casino operated by codefendant Río Mar. (Docket No. 1.) Plaintiff, now a 42-year-old male, began working at the casino as a dealer in 1996.[1] (Id.) Codefendant Birriel, who is also male, worked as Plaintiff's supervisor until 2009. (Docket No. 41–7.) Plaintiff alleges that Birriel has sexually harassed him for several years, including by twice touching Plaintiff's genitals. (Docket No. 1 at 3; 57 at 1.) In 2007 or 2008, Birriel first grabbed Plaintiff's genitals. (Docket Nos. 1 at 4; 57–1 at 1.) In February 2008, Plaintiff met with Millie Rivera ("Rivera"), Río Mar's Human Resources Manager, to complain about Birriel. (Docket Nos. 58–1; 59 at 3.)

In January 2009, in front of several co-workers, Birriel grabbed Plaintiff's genitals for the second time, commenting that Plaintiff's genitals were large. (Docket No. 57–1 at 2.) Plaintiff alleges that sometime before March 5, 2009, Río Mar informed Birriel of Plaintiff's visit to Human Resources.[2] (Docket Nos. 1 at 5; 57–1 at 3.) After that, Plaintiff alleges, Birriel began retaliating against Plaintiff for having complained. (Docket Nos. 1 at 5; 57–1 at 3.) For example, Plaintiff received a verbal "counseling" after taking a break from his position on the casino floor without first notifying the security cameras. (Docket No. 41–1 at 10.) Plaintiff concedes that he violated company policies, but argues that Birriel enforced the policy more strictly against him than was customary. (Docket No. 59 at 5.)

---

[1] Until 2007, the resort and casino was under different ownership, doing business as the Westin Río Mar. (Docket No. 41–3.) In 2007, Codefendants Río Mar Associates acquired the facility, and the name changed to Río Mar Beach Resort & Spa, a Wyndham Grand Resort. (Id.)

[2] Río Mar and Birriel both contend that Birriel was not informed of Plaintiff's visits to Human Resources until after Plaintiff filed his formal, written complaint on March 13, 2009. (Docket No. 41–1 at 11.)

This "counseling" prompted Plaintiff to return to the Human Resources Department, where he filed a written complaint regarding Birriel's harassment on March 13, 2009. (Docket Nos. 41–1 at 3; 57–1 at 3.) Johanna Vargas ("Vargas"), Río Mar's Human Resources Manager, conducted an internal investigation into Plaintiff's allegations. (Docket No. 41–1 at 6.) At the conclusion of the investigation, Río Mar issued a memorandum to Birriel. (Docket No. 41–4 at 7.) The memorandum acknowledged Birriel's admission that he "made the gesture as if trying to touch this employee's private parts" on various occasions. (Id.) The memorandum further warned Birriel that if he continued to engage in such conduct, he could be terminated. (Id.)

Approximately one month after Plaintiff filed his complaint, Vargas met with Plaintiff to inform him that his complaint had been handled. (Docket No. 41–1 at 6.) Vargas told Plaintiff to go to her if Birriel engaged in any additional inappropriate conduct. (Id.) Upset that Río Mar did not separate him from Birriel, Plaintiff requested transfer to a later shift during which Birriel was not the usual supervisor. (Id.) Río Mar granted the request. (Docket Nos. 41–1 at 6; 59 at 4.)

Plaintiff alleges that various employees at Río Mar, including Birriel, have retaliated against him for complaining of Birriel's harassment. (Docket No. 57–1 at 3–4.) In April 2009, Jacobs met with Plaintiff, after some unhappy customers approached Jacobs and named Plaintiff in their complaint. (Docket No. 41–8 at 7.) Plaintiff concedes that the customer complaint was real, but argues that Jacobs' real motive for following up with him was retaliatory. (Id.) Plaintiff also filed an internal complaint for retaliation in November 2009, after he was told that he would not be able to take his previously-approved vacation days due to a staffing shortage.

Civil No. 10-2013 (JAF)                                                                                                           4

(Docket Nos. 57–1 at 4; 41–8 at 28–31.) Plaintiff makes several other allegations of retaliation, including that Birriel has been rude to him, unfairly scrutinized Plaintiff's work, and forced him to come into work early. (Docket No. 41–8.)

Finally, Plaintiff claims that Río Mar has unfairly denied him an opportunity to be promoted to Marketing Manager. (Docket No. 41–7 at 11–14.) Río Mar filled the position with other candidates in 2004 or 2005, and again in 2007. (Id.) Plaintiff concedes that disciplinary problems made him unqualified for the position in 2004 or 2005, (Id. at 12), but argues that he was denied a meaningful opportunity to be considered for the position in 2007 (Id. at 13–14). Then, in 2011, Plaintiff claims that Río Mar awarded the position of Marketing Manager to another candidate, without first posting the job and giving him an opportunity to apply.[3] (Id. at 15.)

On October 14, 2009, Plaintiff filed a formal charge regarding this harassment and retaliation before the Equal Employment Opportunity Commission ("EEOC"), and he received a right-to-sue letter from the EEOC on July 23, 2010.[4] (Docket Nos. 1 at 2; 41–27 at 1–3; 59 at 4.) Plaintiff did not file a charge with the Puerto Rico Department of Labor. (Docket Nos. 41–27 at 1; 69 at 7; 69–2 at 4; 69–5; 69–6 at 2.)

---

[3] Río Mar responds that the position formerly known as Marketing Manager was renamed Executive Host in 2010, and posted for three months. (Docket No. 41–1 at 16.) Río Mar claims that no employees applied for the position, so it awarded the position to an employee who had been filling it in a temporary role. (Docket Nos. 41–1 at 16–17; 41–25.) Río Mar also contends that the employee is better qualified than Plaintiff. (Docket Nos. 41–1 at 17; 42 at 7.)

[4] In his complaint, Plaintiff lists October 11, 2009, as the date he filed a charge with the EEOC. (Docket No. 1 at 2.) Defendants introduce a copy of the charge listing October 14 as the correct date, which Plaintiff accepts. (Docket No. 41–1 at 9; 41–27 at 1; 59 at 4.)

## II.

## Summary Judgment Under Rule 56

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence but may instead point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51

Civil No. 10-2013 (JAF) 6

(2000).  "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

### III.

### Analysis

Plaintiff alleges that Defendants violated Title VII with the actions described above in Part I.  Specifically, Plaintiff alleges (1) disparate treatment theories of gender discrimination, in violation of Title VII; (2) sexual harassment, in violation of Title VII; and (3) retaliation for protected activity, in violation of Title VII.  (Docket No. 1.)  He further maintains that each intentional discrimination and retaliation claim can be proven by discrete incidents, Defendants' creation of a hostile work environment, and other events.  (Id.)  Defendants argue that they are entitled to summary judgment on each of these claims, mounting several arguments.[5]  (Docket Nos. 41; 42; 44.)  For the reasons described below, we agree.

**A.    Title VII**

Title VII prohibits employers from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual, or otherwise . . . discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  This prohibition covers discrete acts of employment discrimination, such as termination or refusal to hire, but its reach is not limited to "'economic' or 'tangible' discrimination."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002).

---

[5] Defendants present several arguments in support of their summary judgment motions.  (Docket Nos. 42; 44.)  Because we grant summary judgment on other grounds, we do not reach Defendants' additional arguments that Plaintiff failed to exhaust administrative remedies, (Docket No. 42 at 5–6), or that Defendants' remedial action precludes employer liability (id. at 10–11).  See Perez Perez v. Key Pharms., 729 F. Supp. 204, 206 (D.P.R. 1989) (finding one argument sufficient to grant summary judgment and declining to address defendants' additional arguments).

Even in the absence of an adverse employment decision, § 2000e-2(a)(1) prohibits employers from requiring employees "to work in a discriminatorily hostile or abusive environment." Id. Title VII also makes it unlawful for employers to retaliate against employees who seek Title VII's protections. See 42 U.S.C. § 2000e-3(a).

### 1. Timeliness

The first issue we must address is timeliness. Citing a 180–day limitations period, Defendants argue that most of the incidents Plaintiff complains of are time-barred. (Docket Nos. 42 at 2, 4, 6, 11, 15; 69 at 8.) Plaintiff argues that his claims were subject to a 300–day, rather than 180–day, limitations period. (Docket No. 74 at 2.) Plaintiff further argues that under the continuing violations doctrine, his claims are not time-barred. (Docket No. 58 at 10–11.) For the reasons explained below, we agree with Defendants.

Title VII requires a plaintiff to file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred, or within 300 days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. §§ 2000e–5(e)(1). The lawsuit must be brought within ninety days "after notice that the administrative charge has been dismissed or after the agency has issued a right-to-sue letter." Clockedile v. N.H. Dep't. of Corr., 245 F.3d 1, 3–4 (1st Cir. 2001) (citing § 2000e–5(f)(1)). "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts in timely filed charges." Morgan, 536 U.S. at 113 (2002). Examples of unlawful discriminatory or retaliatory adverse employment decisions classified as discrete discriminatory acts include "termination, failure to promote, denial of transfer, or refusal to hire." Id. at 114. "Each discrete discriminatory act starts a new clock for

filing charges alleging that act" and the EEOC charge "must be filed within the 180– or 300–day period after the discrete discriminatory act occurred." Id. at 113. However, a plaintiff "may use prior acts as background evidence in support of a timely claim." Id.; see also United Airlines Inc. v. Evans, 431 U.S. 553, 558 (1977) (explaining that prior acts outside the statutory period "may constitute relevant background evidence" of employment discrimination). Moreover, the "time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." Morgan, 536 U.S. at 113 (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).

The Supreme Court has explained how discrete acts of discrimination differ from claims of a hostile work environment: "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct . . . . [The conduct] occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115. Under the continuing violation doctrine, a plaintiff "can seek damages for otherwise time barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) (quoting Provencher v. CVS Pharm., 145 F.3d 5, 14 (1st Cir. 1998)) (internal quotation marks omitted). "For the continuing violation doctrine to apply, [Plaintiff] needs to establish that a discriminatory 'anchoring act' occurred within the limitations period." Lockridge v. The Univ. of Me. Sys., 597 F.3d 464, 474 (1st Cir. 2010) (quoting Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005)).

In this case, Plaintiff filed his EEOC complaint on October 14, 2009. (Docket No. 57–1.) It is uncontested that Plaintiffs did not file a complaint with Puerto Rico's Department of Labor, the agency designated "with authority to grant or seek relief from" claims of gender discrimination and sexual harassment under 42 U.S.C. §§ 2000e–5(e)(1). 29 C.F.R. § 1601.74. (Docket Nos. 41–27 at 1; 69 at 7; 69–2 at 4; 69–5; 69–6 at 2.) Plaintiff's failure to file a claim with Puerto Rico's Department of Labor means that he was subject to the 180–day, rather than the 300–day, statute of limitations.[6] §§ 2000e–5(e)(1). Plaintiff's retaliation claims are also subject to a 180–day limitations period.[7] Absent some exception to the statute of limitations, then, any discriminatory acts that occurred before April 17, 2009 are time-barred. Having established the applicable time bar for Plaintiff's claims, we now address the merits of each claim.

2.   **Gender Discrimination**

As discrete incidents, Plaintiff's "failure-to-promote" claims from 2004 and 2007 are time-barred. Morgan, 536 U.S. at 114. We turn then to Plaintiff's "failure-to-promote" claim

---

[6] Defendants raise this point in their reply to Plaintiff's opposition. (Docket No. 69 at 6–8.) Plaintiff responds that "the Equal Employment Opportunity Act states that the filing deadline is extended to 300 days if the charge also is covered by a state or local anti-discrimination law, as is the case in Puerto Rico." (Docket No. 74 at 2.) We assume that Plaintiff means to refer to 42 U.S.C. § 2000e–5(e)(1), the relevant section of the enacting law of the Equal Employment Opportunity Act of 1972, Pub. L. No. 92–261, 86 Stat. 103. In fact, 42 U.S.C. § 2000e–5(e)(1) states that the 300–day period applies only if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." Plaintiff did not do so; his sexual harassment claim is, therefore, subject to the 180–day period.

[7] Plaintiff's retaliation claims are also governed by a 180–day limitations period. (Docket No. 58–1.) Plaintiff did not file a charge of retaliation with any state or local body that would have extended the limitations period to 300 days. (Docket Nos. 41–27 at 1; 69 at 7; 69–2 at 4; 69–5; 69–6 at 2.) We note also that Puerto Rico's Department of Labor is not authorized by the EEOC to handle claims of retaliation under Title VII. 29 C.F.R. § 1601.74. Because Puerto Rico has no [s]tate or local agency with authority to grant or seek relief from claims of retaliation, the 180–day limitations period applies. Alvarez v. Delta Airlines, 319 F. Supp. 2d 240, 249 (D.P.R. 2004) (citing 29 C.F.R. § 1601.74 and 42 U.S.C. §§ 2000e–5(e)(1)). Therefore, even if Plaintiff did file a charge of retaliation with Puerto Rico's Department of Labor, his claim of retaliation would be governed by the 180–day limitations period. Id.; 42 U.S.C. §§ 2000e–5(e)(1).

Civil No. 10-2013 (JAF) 10

from 2011. Defendants argue that Plaintiff fails to state a prima-facie case of sex discrimination, (Docket No. 42 at 2–8), and Plaintiff does not respond. (Docket No. 58.) We agree with Defendants.

To establish a prima-facie case of gender discrimination, Plaintiff must show that: 1) he is a member of a protected class, 2) he was qualified for the open position for which he applied, 3) he was rejected for that position, and 4) someone holding similar qualifications received the position instead. Goncalves v. Plymouth Cnty. Sheriff's Dep't., 659 F.3d 101, 105 (1st Cir. 2011). Plaintiff has failed to satisfy the second and fourth prongs.[8]

As to the second prong, Plaintiff has failed to show he was qualified for the position. The position of Executive Host required being fully bilingual, and Plaintiff concedes that he does not speak much English. (Docket No. 41–22 at 19–20.) Plaintiff also fails the fourth prong. The person who received the position, Angie Podesta, had extensive managerial experience, including a stint as a temporary employee in the Executive Post position, and is fully bilingual. (Id.) As Plaintiff is not similarly qualified, (id.), he has failed to state a prima-facie case of gender discrimination.

**3.     Sexual Harassment**

Defendants maintain that all of Plaintiff's sexual harassment allegations are time-barred by the 180–day period of limitations. (Docket No. 69 at 6–7.) Plaintiff responds, mistakenly,

---

[8] As to the first prong, Defendants argue that Plaintiff's sexual orientation is not a protected category. (Docket No. 42 at 3.) Plaintiff has provided no evidence that he was discriminated against "because of . . . sex." (Id.) We need not reach this argument because of our finding that Plaintiff's claim fails the second and fourth prongs of our prima-facie case. For a longer discussion of Defendants' "because of . . . sex" argument under Title VII, see Part III.A.3.

Civil No. 10-2013 (JAF) 11

that a 300–day, not 180–day period, applies to his claims.[9] (Docket Nos. 14 at 3; 58 at 10; 74 at 2.) Plaintiff argues further that the continuing violation doctrine saves his hostile work environment claim, "as long as one act of the harassment occurred within the statutory period." (Docket No. 58 at 11.) Somewhat remarkably, Plaintiff does not cite to any record evidence of an incident that occurred within the statutory period, or provide any developed argument on these points. (Id.) Later, in his sur-reply to Defendant's response to Plaintiff's opposition, Plaintiff refers to Defendant's groping his genitals. (Docket No. 74 at 2.)

As established above, these incidents fall outside of the statutory period. The last occasion on which Birriel grabbed Plaintiff's genitals was in January 2009. This incident was well before April 2009, the outer boundary of the applicable 180–day limitations period. Plaintiff has, thus, failed to point to any discriminatory act that occurred during the limitations period.

Under these circumstances, the continuing violations doctrine cannot save Plaintiff's harassment claim. "For the continuing violation doctrine to apply, [Plaintiff] needs to establish that a discriminatory 'anchoring act' occurred within the limitations period." Lockridge, 597 F.3d at 474 (1st Cir. 2010) (quoting Noviello, 398 F.3d at 86 (1st Cir. 2005)). Plaintiff has failed to establish that any anchoring act occurred. "Common sense teaches that a plaintiff cannot resuscitate time barred acts, said to be discriminatory, by the simple expedient of linking them to a non-identical, non-discriminatory, non-time barred act." Id. (quoting Lawton v. State Mut. Life Assur. Co. of Am., 101 F.3d 218, 222 (1st Cir. 1996)) (emphasis in Lockridge, 597 F.3d at 474).

---

[9] See Part III.A.1, establishing that a 180–day limitations period applies to Plaintiff's harassment claims.

Civil No. 10-2013 (JAF)                                                                                              12

If this were not enough, and we think that it is, Plaintiff's harassment claim fails for another reason. Title VII prohibits employers from "discriminating against any individual . . . because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "The statutory 'because of . . . sex' requirement is not met simply because workplace harassment involves sexual matters: the substance of the violation is discrimination based on sex." Higgins, 194 F.3d at 258. In interpreting Title VII, the Supreme Court has stated, "[t]he critical issue is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Svc's., 523 U.S. 75, 80 (1998) (internal citations and quotation marks omitted).

Here, Plaintiff has provided no evidence that he was harassed because of his sex. Rather, Plaintiff asserts that he was harassed "because of his sexual preferences and/or orientation." (Docket No. 59 at 4.) In response to Defendants' argument that such claims are not cognizable under Title VII, (Docket Nos. 42 at 3, 9; 69 at 2–3), Plaintiff cites only the two instances when Birriel grabbed his genitals, repeating his insistence that "the law intends to protect everyone from this conduct." (Docket No. 74 at 2.) Plaintiff does not account for the fact that these incidents fall outside the statute of limitations. (Id.)

On this point, the law is on the side of Defendants. As the First Circuit stated in Higgins,

> We hold no brief for harassment because of sexual orientation; it is a noxious practice, deserving of censure and opprobrium. But we are called upon here to construe a statute as glossed by the Supreme Court, not to make a moral judgment-and we regard it as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation.

194 F.3d at 258. Plaintiff's theory of recovery–harassment based on sexual orientation– is not cognizable under Title VII. Id; see also Ayala-Sepulveda v. Municipality of San German, 661 F. Supp. 2d 130, 136 (D.P.R. 2009) ("Title VII does not proscribe harassment simply because of sexual orientation.").

### 4. Retaliation

Title VII retaliation claims follow the familiar McDonnell Douglas burden-shifting framework. Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). To establish a prima-facie case of retaliation under Title VII, a plaintiff must show: (1) plaintiff's protected participation or opposition, see § 2000e-3(a); (2) a materially-adverse employment action that harmed the plaintiff inside or outside the workplace and that was harmful enough to "dissuade a reasonable worker from making or supporting a charge of discrimination"; and (3) the adverse action taken was causally linked to plaintiff's protected activity. Mariani, 511 F.3d at 223. We find that Plaintiff has failed to demonstrate a materially-adverse employment action.[10]

---

[10] Defendants argue that Plaintiff fails the first prong. Because Title VII does not proscribe harassment based on sexual orientation, Defendants argue, opposition to such harassment is not protected activity under Title VII's anti-retaliation provisions. (Docket No. 42 at 15.) Defendants are mistaken. To satisfy the first prong of protected activity, a plaintiff "need not prove that the conditions against which he protested actually amounted to a violation of Title VII." Fantini v. Salem State Coll., 557 F.3d 22, 32 (internal citations and quotation marks omitted). Rather, a plaintiff must demonstrate only that he "had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Id. (internal citations and quotation marks omitted). There is ample evidence in the record to show that Plaintiff did have a good faith, reasonable belief that the harassment he was subject to–including the unwanted touching of his genitals and public mocking by Birriel– was illegal. For example, in his meetings with Wyndham's human resources department, Plaintiff considered the possibility that Birriel could be fired for such conduct. (Docket No. 41–7.) Nevertheless, Plaintiff's failure on the second and third prongs dooms his retaliation claim.

Civil No. 10-2013 (JAF) 14

Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Morales-Vallellanes v. Potter, 605 F.3d 27, 36 (1st Cir. 2010) (internal quotation marks omitted) (citing Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 64 (2006)). A retaliation plaintiff must simply show "that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. The creation or intensification of a hostile work environment can constitute such an adverse employment action. Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006). However, "[m]inor disruptions in the workplace, including 'petty slights, minor annoyances, and simple lack of good manners,' fail to qualify" as adverse employment actions that could satisfy this objective inquiry. Morales-Vallellanes, 605 F.3d at 36 (quoting Burlington, 548 U.S. at 68.).

Defendants argue that Plaintiff has failed to show he suffered an adverse employment action as retaliation. (Docket No. 42 at 17–29.) Plaintiff does not respond to this argument. (Docket Nos. 58; 69 at 14; 74 at 2.) After carefully reviewing the evidence, we conclude there is nothing in the record to support a claim of retaliation.

Plaintiff's allegations of retaliation include: Birriel expressing concern related to Plaintiff's admittedly-late entries to work (Docket No. 41–8 at 35–37); a non-disciplinary "counseling" by Birriel on March 5, 2009, after Plaintiff admittedly violated the company's security policies (Docket No. 41–22 at 65–69); Birriel placing Plaintiff's food in a drawer after it had been left out at a work area (Docket No. 41–7 at 18); another non-disciplinary "counseling" initiated by Jacobs after customers provided Plaintiff's name in a complaint to

Jacobs (Docket Nos. 41–8 at 7; 41–29 at 2); a meeting in October 2009, in which Plaintiff was given an opportunity to discuss his concerns related to Birriel (Docket No. 41–7 at 20); and two denials, later cancelled,[11] of three days of vacation to Plaintiff, due to staffing shortages (Docket Nos. 41–32 at 2). Plaintiff also alleges that Birriel: told Plaintiff to "get out" of the attendant's area (Docket No. 41–7 at 18); claimed untruthfully during a meeting that he and Plaintiff were "friends" and then laughed at Plaintiff afterward (id. at 21); and commented that "[t]his is not going to stay like this," (Docket No. 41–8 at 4).[12]

We first consider whether, under the circumstances, any of the incidents could dissuade a reasonable employee from making a charge of discrimination. See Lockridge, 597 F.3d at 472 (emphasizing that "[a]fter Burlington Northern, employment actions are less susceptible to categorical treatment" in determining whether they are materially adverse). After careful review, we conclude that there is no evidence of a materially-adverse employment action. Of all the incidents Plaintiff complains of, the potentially most serious are the "counselings" he received

---

[11] In both instances, Río Mar resolved the controversy by allowing Plaintiff to take the days off of work. In October 2009, Plaintiff took the entire week off of work, classifying the time as sick leave. (Docket No. 41–22 at 33.) In 2010, Río Mar reversed its decision and allowed Plaintiff to take the vacation days as planned. (Docket No. 41–32.)

[12] Defendants object that many of the allegations in Plaintiff's deposition are inadmissible hearsay under Rule 56, (Docket No. 42 at 21), and Plaintiffs do not respond (Docket No. 58). We agree with Defendants. Federal Rule of Civil Procedure 56(e)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(4). We agree with Defendants that the following allegations are inadmissible hearsay not to be considered for summary judgment: (1) allegations that Birriel told another employee he planned to "get back" at Plaintiff for filing an internal complaint (Docket No. 41–8 at 5); (2) allegations that another employee told Plaintiff that Birriel had asked security to record Plaintiff (Docket No. 41–8 at 25); (3) allegations that Birriel made negative comments to another employee after Plaintiff dressed as a woman in a Halloween costume contest (Docket No. 41–7 at 16–18); (4) allegations that Birriel told another employee he was unhappy with Plaintiff covering another employee's shift (Docket No. 41–8 at 2). Plaintiff offers these statements as evidence of harassing conduct by Birriel. Plaintiff does not claim to have heard Birriel make these statements. (Docket Nos. 41–8 at 2, 5, 24, 25; 41–7 at 5–6.) They are, therefore, inadmissible hearsay. See Noviello, 398 F.3d at 85 (1st Cir. 2005) ("Insofar as the plaintiff is attempting to introduce this statement as evidence of other coworkers' harassing behavior, it is hearsay; its probative value ultimately depends on the truth of declarant's own unsworn out-of-court utterance. It is, therefore, admissible. See Fed. R. Evid. 801, 802").

from Defendants.[13] Courts in this District have found that negative performance evaluations and warnings do not constitute materially-adverse employment actions under Title VII. Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 371 (D.P.R. 2008); see also Sweeney v. West, 149 F.3d 550, 557 (7th Cir. 1998) (holding that "counseling statements" similar to negative performance reviews do not constitute materially-adverse employment actions). In this case, there is evidence that Plaintiff has received a total of twenty-five counselings and coaching memos during his years of employment at the casino. (Id.) Only three of these have been from Birriel. (Id.) There is no evidence that any of the "counselings" Plaintiff labels as retaliation led to any significant change in Plaintiff's working conditions. (Docket No. 41–1 at 15–16.)

Moreover, even if these actions did constitute a materially-adverse employment action, Plaintiff has done nothing to rebut any of the non-retaliatory justifications put forward by Defendants.[14] (Docket No. 58.) For example, Defendants describe the specific reasons that led to their "counselings" of Plaintiff, including Plaintiff's record of late entrances, violations of company policy, and customer complaints.[15] (Docket Nos. 41–1 at 15–17; 41–29; 41–35.) In

---

[13] These "counselings" are the only examples of retaliation that Plaintiff discusses in his opposition papers. (Docket No. 58 at 7.)

[14] The parties dispute whether Plaintiff has satisfied the third prong of a prima-facie case of retaliation, as to causation. (Docket No. 42 at 17.) Rather than engaging that question, "we believe it both expeditious and appropriate under these circumstances to assume that [Plaintiff] has made out a prima facie case in order to move onto the real issues in the case." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (internal quotation marks and citations omitted). When considering a summary judgment motion on a Title VII claim, we may "dispense with strict attention to the [Title VII] burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus." Id. (quoting Fennell v. First Step Designs, Ltd., 83 F.3d 526, 535 (1st Cir. 1996)).

[15] Defendants offer similarly persuasive justifications for other actions that Plaintiff labels as retaliation. For example, Defendants contend that staffing shortages caused them to deny, at least initially, Plaintiff's vacation days on two occasions. (Docket Nos. 41–7 at 20; 41–32 at 2.) Plaintiff puts forward no evidence to show that these, or any of the Defendants' other non-retaliatory justifications, (Docket No. 42 16–28), were pretextual.

response, the only evidence that Plaintiff cites is an e-mail from the human resources department, sent in February 2008, in which Arturo Ortiz, Río Mar's then human resources manager, tells a floor manager that he <u>can not</u> recommend discipline at the moment, because of another "sensitive matter" pending at the time involving Plaintiff. (Docket Nos. 58 at 7; 58–2.) Plaintiff does not explain the context of this e-mail, or argue how the e-mail shows any intent to retaliate against Plaintiff. (Docket No. 58 at 7.) We agree with Defendants, (<u>see</u> Docket No. 69 at 13), that the e-mail does nothing to support an "inference of retaliatory motive." <u>Mariani-Colon</u>, 511 F.3d at 224 (quoting <u>Colburn v. Parker Hannifin</u>, 429 F.3d 325, 338 (1st Cir. 2005)).

Plaintiff has failed to carry his burden of rebutting Defendant's non-retaliatory justifications. "A plaintiff cannot defeat summary judgment by relying on 'conclusory allegations, or rank speculation.'" <u>Id.</u> (quoting <u>Fontánez-Nuñez v. Janssen Ortho LLC</u>, 447 F.3d 50, 55 (1st Cir. 2006)). "To defeat summary judgment, a plaintiff must make a colorable showing that an adverse action was taken for the purpose of retaliating against him." <u>Id.</u> (internal citations and quotation marks omitted). Plaintiff has simply failed to make such a showing.

Nor do any of Plaintiff's other allegations rise to the level of a hostile work environment. When considering whether a work environment is hostile, we consider "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" <u>Ayala-Sepulveda v. Municipality of San German</u>, No. 10-2123, 2012 WL 130084, at *5 (1st Cir. Jan. 18, 2012) (quoting <u>Morgan</u>, 536 U.S. at

122). "None of these factors is individually determinative of the inquiry." Id. Having searched the record,[16] we agree with Defendants that there is insufficient evidence to establish a hostile work environment.

Plaintiff has failed to introduce any evidence that the alleged harassment "unreasonably interfere[d] with [his] work performance." (Id.) (quoting Morgan, 536 U.S. at 116). The only evidence on the record that approaches this is the psychological distress Plaintiff has felt from the situation, but, under these circumstances, such a showing is not sufficient to establish a hostile working environment. See, e.g., id. (collecting cases; noting the importance of work performance as a factor indicating a hostile work environment). Plaintiff has failed to demonstrate the type of "significant, not trivial harm" required to establish a materially-adverse employment action. Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an act or omission does not elevate that act or omission to the level of materially adverse employment action." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2006) (internal quotation marks omitted).

As in Plaintiff's sexual harassment claim, Plaintiff's failure to establish a hostile work environment dooms his effort to invoke the continuing violations doctrine. Lockridge, 597 F.3d at 474.

---

[16] Rather than providing citations to specific incidents and page numbers, Plaintiff repeatedly makes general statements and citations, e.g., to "Docket 41, Exh. 8." (Docket No. 59 at 8.) The document that Plaintiff refers to is a deposition of Plaintiff that exceeds forty-one pages. While we have made every reasonable effort to consider all the evidence in the record, we remind Plaintiff of Local Rule 56(e), which states that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation . . . . The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' statement of facts." L. Cv. R. 56(e) (D.P.R. 2010).

**B.     Puerto Rico Law Claims**

The Supreme Court has stated that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).  This is not a "mandatory rule to be applied inflexibly in all cases." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).  "Rather, a district court must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (quoting Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256–57 (1st Cir. 1996)).  This decision involves a weighing of various factors, including comity, judicial economy, convenience, and fairness.  Id. (internal citations omitted).

Having considered these factors, we decline to exercise supplemental jurisdiction over Plaintiff's Puerto Rico law claims.  Both parties have focused their efforts here on the federal claims; the Puerto Rico law issues have received much less attention.  Moreover, much of the discovery has been conducted in Spanish and is available for trial in Puerto Rico courts.  See id. (emphasizing the hardship to plaintiff that results from having to translate "extensive discovery" taken in English).  We also think that comity will be served by allowing local courts to resolve the few disputed issues of Puerto Rico law that have arisen, *e.g.*, when the statute of limitations tolled on Plaintiff's Commonwealth law claims.  (See Docket Nos. 58 at 4; 69 at 3–6.)

## IV.

## Conclusion

For the foregoing reasons, we hereby **GRANT** Defendants' motion for summary judgment on all federal claims. (Docket Nos. 41; 44.)  We **DISMISS** Plaintiff's claims under Puerto Rico law without prejudice, and **DISMISS** Plaintiff's complaint in its entirety. (Docket No. 1.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 7th day of February, 2012.

s/José Antonio Fusté
JOSE ANTONIO FUSTE
U.S. District Judge